UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FOUR-LEAF CLOVER DAIRY, LLC, | ) | Case No. 10-13574 |
| | ) | |
| Debtor. | ) | |

### AFFIDAVIT OF LEONTIEN MARTINA WILHEMINA van de LAAR
### IN SUPPORT OF FIRST DAY MOTIONS

I, Leontien Martina Wilhemina van de Laar ("Leontien"), affirm under penalties of perjury the following:

1. I am the manager of Four-Leaf Clover Dairy, LLC ("Dairy"), the debtor and debtor-in-possession in the above captioned case ("Chapter 11 Case").  I submit this affidavit ("van de Laar Affidavit") in support of the various first day and emergency motions ("First Day Motions") filed concurrently herewith.

2. I have reviewed the First Day Motions (including the exhibits thereto) and I believe the relief sought in each (a) is vital to enable Dairy to make the transition to, and operate in, Chapter 11 with a minimum of interruption or disruption to the business or loss of productivity and (b) constitutes a critical element in achieving Dairy's successful reorganization. Any capitalized terms not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Motion.

3. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, my review of relevant documents, my opinion, my experience and knowledge of Dairy's operations and financial condition, or are based upon the experience and knowledge of Dairy's employees, as reported to me.  If I were called upon to testify, I could and

would testify competently to the facts set forth herein. I am authorized on behalf of Dairy to submit this Affidavit.

**DAIRY BACKGROUND AND EVENTS LEADING TO CHAPTER 11 CASE**

4.  Dairy is an Indiana limited liability company that owns and operates a commercial family dairy farm located at 7630 E. 1100 S90, Geneva, Indiana 46740. Dairy leases its property and facilities from Four Leaf Clover Leasing, LLC on a triple net lease. Dairy operates on 80 acres with a herd of about 2000 Holstein dairy cattle. Dairy began operating since November 2007.

5.  Dairy has a current capacity of approximately 2,034 on-site and 300 offsite stalls and is milking about 1,770 cows on a daily basis. Dairy had accrual profits of $500,000 in 2008 and recorded $7,317,608 in gross revenue in 2009. As of June 30, 2010 Dairy had generated $3,941,518 in gross revenue in 2010. Dairy's primary source of income comes from the sale of milk to Dairy Farmers of America, Inc. ("DFA"). Dairy receives weekly estimated payments on its milk sales from DFA and a final reconciliation payment from DFA on or about the 15th day of each month for milk sold during the immediately preceding month.

6.  Dairy employs 20 employees, with an average annual payroll of approximately $442,000. Dairy is a valuable contributor to the local economy of Wells County, Indiana, purchasing feed, supplies and services locally to support its operations. Those local dollar expenditures average about $4 million annually.

7. Dairy financed its purchase of cows and feed and business operations through two loans ("Loans") from Bank of America, N.A. ("BOA").[1] The Loans include language granting BOA a security interest in certain assets of the Debtor.

8. Beginning in or around Spring, 2009, dairies across the country were hit hard as market prices for milk fell dramatically to lows of less than $10 per hundred weight ("CWT") from highs of up to $24 per CWT in the prior years. The dramatic decline in the prices a buyer was willing to pay for milk substantially decreased Dairy's revenues at the same time that fixed costs for feed and other supplies went up. In 2008, BOA determined not to renew the Loans even though Dairy was not in default. In 2009, because BOA did not renew the Loans, Dairy had to use its cash to purchase feed and was unable to maintain its optimum herd size. The outstanding balance under the Loans is approximately $2.8 million.

9. Dairy's decreased profits made it difficult to operate the dairy at capacity. Dairy did not have the funds to maintain its customary herd turnover and herd size. Despite the lower market prices for the sale of milk, Dairy has remained mostly current with its trade creditors and is current on taxes.

10. In addition and in response to the declining milk prices and decreased profit margins, Dairy has eliminated unnecessary costs and reworked unprofitable contracts. Through these efforts, Dairy has dramatically reduced the minimum production needed for a "break even" operation. Milk prices have started to rebound and Dairy forecasts stabilizing revenue and a return to profitability and the ability to pay its debts.

11. The severe fluctuations in milk prices, fuel prices, and feed costs over the last two years has directly contributed to Dairy's current circumstances. Dairy has filed this

---

[1] BOA purchased the Loans from LaSalle Bank as part of its merger/purchase of LaSalle Bank.

Chapter 11 Case to restructure the debt on its operations and assets and continue as a valuable contributor to the local economy.

**FIRST DAY MOTIONS**

A.   *First Day Cash Collateral Motion*

12. I have reviewed the First Day Cash Collateral Motion ("Cash Collateral Motion") and believe the relief requested therein is necessary to the continued operation of Dairy's business operations. The Cash Collateral Motion, as I understand it, seeks the entry of an interim and a final order authorizing the use of cash and cash equivalents in which BOA asserts a security interest.

13. Dairy's counsel informs me that cash and cash equivalents received by Dairy from and after the Petition Date as proceeds of BOA's asserted prepetition collateral including funds from milk and milking operations may constitute cash collateral of BOA ("Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code. To the extent that is found to be valid by this Court and in order for Dairy to operate its business in a normal fashion and preserve the bankruptcy estate, it is critical that Dairy have immediate authorization to use cash pursuant to the terms and conditions of the Interim Order.

14. In addition to allowing Dairy's business to continue on a normal basis, authorizing the use of Cash Collateral will enable Dairy to (i) best utilize its existing and available financial resources, (ii) engender confidence in vendors and allow Dairy to purchase goods and services on normal trade terms, and (iii) fund payments that will be required pursuant to other orders of this Court.

15. Dairy's use of the Cash Collateral as requested herein will not result in any diminution in the Bank's position during the Interim Cash Collateral Period. As the Cash Use Budget indicates, Dairy had about $2,000 in its bank accounts on the Petition Date and projects

that week to week it will maintain a positive balance of cash such that BOA will be adequately protected in Dairy's use of the Cash Collateral.  Moreover, Dairy will grant to BOA replacement liens in its assets that are similar to the assets BOA asserts a prepetition security interest in to the extent of the diminution in value of BOA's Cash Collateral.

16. Dairy is generally current with its vendors, owes no past due taxes and will be able to adequately protect BOA during the course of the Chapter 11 Case from the cash generated by its operations.

17. Dairy has immediate need to use its cash to pay the ordinary and reasonable expenses of operating its business, including, without limitation, payroll and benefit expenses, utility services, payroll taxes, insurance, supplies and equipment, vendor and supplier services, and other expenditures as are necessary for operating Dairy's business.  In addition, such cash would be necessary to fund other payments approved by Court order, including the payment of professional and other administrative expenses.

18. I believe the terms and conditions of the Interim Order are fair and reasonable under the circumstances and reflect Dairy's exercise of reasonable business judgment consistent with Dairy's fiduciary duties as debtor in possession.

19. Without the relief granted in the Interim Order, Dairy may be forced to suspend or curtail its normal operations.  Because the use of cash by Dairy is necessary to prevent the harm that would befall Dairy, its estate, its creditors and employees if Dairy's business had to cease operations, the Court should authorize Dairy's use of cash and enter the Interim Order as attached to the Cash Collateral Motion.

B.     *Motion to Pay Prepetition Wages and Other Obligations to Employees*

20.     I have reviewed Dairy's Emergency Motion to Pay Prepetition Wages and Other Obligations to Employees ("Employee Obligations Motion").  As of the Petition Date, Dairy employs 20 employees.

21.     Based upon my review of the Employee Obligations Motion, it is my understanding that Dairy is requesting the Court to enter an order authorizing, but not directing, Dairy to pay or otherwise honor prepetition wages, salaries and other prepetition obligations (collectively, "Employee Obligations"), owing to Dairy's employees (collectively, "Employees").

22.     Dairy is also seeking the entry of an order directing all banks and other financial institutions to honor Dairy's prepetition checks for payment of the Employee Obligations and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers to Employees' accounts for Employee Obligations.

23.     I believe that the relief requested in the Employee Obligations Motion is necessary because the Employees are vital to the continued operation of Dairy's business, the health of the livestock, and to a successful reorganization.  In order to retain the Employees and maintain morale, I believe that Dairy must have authority to pay or otherwise satisfy the Employee Obligations.  The amounts to be paid to Employees pursuant to the Employee Obligations Motion are reasonable compared with the importance and necessity of the Employees and the losses Dairy will likely suffer if these amounts are not paid.  None of the requested amounts to be paid per individual employee total more than the priority amount provided to these types of claims under Section 507(a)(4) and (5) of the Bankruptcy Code.

24.     Accordingly, I believe that Dairy should be authorized to pay the Employee Obligations in the ordinary course of business.

C.      *Motion to Provide Adequate Assurance to Utilities*

25.     I have reviewed the Emergency Motion For Order (A) Deeming Utilities Adequately Assured of Future Performance, And (B) Establishing Procedure for Determining Adequate Assurances ("<u>Utilities Motion</u>").  I believe that the relief requested is in the best interests of all parties in interest and will similarly benefit all parties in interest in the Chapter 11 Case.

26.     In connection with the operation of its business, Dairy purchases electricity, natural gas, water, telephone and communications services and/or similar services through various utility companies (collectively, "<u>Utility Companies</u>").  Based upon my review of the Utilities Motion, it is my understanding that Dairy is requesting that this Court enter an order enjoining the Utility Companies from altering, refusing, or discontinuing services to, and/or discriminating against, Dairy on the basis of the commencement of the Chapter 11 Case or on account of any unpaid invoice for service provided by any of the Utility Companies to Dairy prior to the Petition Date.

27.     Dairy is also requesting that this Court determine that the Utility Companies be deemed to be adequately assured of future payment by the holding of the current deposits and the nature of Dairy's accounts with the Utility Companies.

28.     Furthermore, Dairy is requesting certain procedures be put in place regarding any Utility Company seeking additional assurance from Dairy.  The procedures detailed in the Utilities Motion are efficient, cost effective, fair and reasonable under the circumstances.

29.     To the best of my knowledge, information, and belief, Dairy is not currently in default on any prepetition payments owed to any of the Utility Companies.  I believe that Dairy's record of generally timely payment in full of prepetition invoices to the Utility

Companies and sufficient funds from postpetition business operations adequately assures Dairy's continued payment for utility services provided by the Utility Companies without the need for deposits or other security from Dairy. Moreover, the Utility Companies are provided further assurance of future payment by virtue of their potential entitlement to administrative expense priority treatment for the provision of any actual and necessary services to Dairy's estate on a postpetition basis. The procedure outlined in the Utilities Motion provides a fair means for any Utility Company to seek relief without endangering the health or welfare of the cattle.

D.  *Emergency Motion to Pay Certain Sales, Use and Other Taxes to Taxing Authorities and Insurance Premiums to Insurer*

30. I have reviewed the Emergency Motion to Pay Certain Sales, Use and Other Taxes to Taxing Authorities and Insurance Premiums to Insurer ("Tax Motion"). Based upon my review of the Tax Motion, I understand that Dairy is seeking an order from the Court authorizing, but not directing, it to pay prepetition sales, use, payroll, trust fund, real estate and other taxes and similar obligations to the respective authorities and insurance premiums to Insurer in the ordinary course of Dairy's business. Nothing contained in the Tax Motion, however, would preclude Dairy from contesting, the validity and amount of any taxes under bankruptcy or nonbankruptcy law or contesting or changing insurance coverage.

31. In connection with the normal operation of its business, Dairy (i) incurs property taxes; (ii) collects sales and incurs use taxes; and (iii) collects or incurs payroll and employment-related taxes on behalf of various taxing authorities (each, a "Tax", and collectively, "Taxes"). The Taxes are paid to various taxing authorities (collectively, "Authorities") on a periodic basis (e.g., monthly, quarterly or yearly) that is established for each particular Tax. On the Petition Date, certain Taxes were incurred or collected by Dairy but were not yet paid to the applicable Authority.

32. While reserving the right to argue to the contrary in particular cases, I am informed that Dairy generally does not have any legal or equitable interest in funds held to pay Taxes. Moreover, to the extent that Taxes are "trust fund" taxes and other amounts are collected from third parties and held for payment to the Authorities, I am informed that they are not property of the chapter 11 estate. Dairy, therefore, generally has no equitable interest in funds collected and segregated to pay Taxes.

33. Dairy believes that some, if not all, of the Authorities may, pursuant to § 362(b)(9) of the Bankruptcy Code, cause Dairy to be audited and subjected to various administrative proceedings if the Taxes are not paid immediately. Such audits and administrative proceedings and the accompanying disruption in business activities would materially and adversely affect Dairy's reorganization prospects and unnecessarily divert Dairy's attention away from the successful launch and prosecution of the Chapter 11 Case.

34. Further, I am informed that most, if not all, of the Taxes, are entitled to priority status under the Bankruptcy Code. Dairy's payment of the Taxes in the ordinary course of business, in all likelihood, will only affect the timing of the payments and not the amounts to be received by such entities. Therefore, I do not believe that other creditors and parties in interest will be prejudiced by such payment.

35. Pursuant to the Tax Motion, Dairy is also seeking authority to pay insurance premiums to Insurer in the ordinary course of Dairy's business and in order to protect Dairy and all of its creditors from the many accidents that can occur on a farm.

36. Pursuant to essentially all of Dairy's loan documents and/or leases, Dairy is required to maintain insurance on its operations and assets. In addition, guidelines of the United States Trustee require that the Debtor maintain insurance coverage. Because the

premium amounts that the Debtor is requesting authority to pay (quarterly payments of approximately $13,000) are insubstantial in comparison with Dairy's exposure absent such coverage, Dairy should be authorized to continue to make premium payments required to maintain coverage.

37. I believe that granting the relief requested will enhance the likelihood of the successful reorganization of Dairy and the probability of maximizing the value of estate assets and, ultimately, the return to creditors. Further, I believe that the timely payment of the Taxes and insurance premiums is necessary and in the best interest of Dairy's estate. Accordingly, Dairy is seeking authority to pay, in its sole discretion, the Taxes to the relevant Authorities and insurance premiums to Insurer in the ordinary course of business.

E. *Emergency Motion For Order Authorizing Maintenance of Existing Bank Accounts and Continued Use of Existing Business Forms*

38. I have reviewed the Emergency Motion For Order Authorizing Maintenance Of Existing Bank Accounts And Continued Use Of Existing Business Forms ("Cash Management Motion"). Based upon my review of the Cash Management Motion, I understand that Dairy is seeking authorization for the continued maintenance of the Bank Accounts and continued use of its existing business forms. I believe that these requests are in the best interests of Dairy, its estate and all parties in interest.

39. It is my understanding that the Office of the United States Trustee has established certain operating guidelines for debtors-in- possession in order to supervise the administration of chapter 11 cases and that those guidelines require chapter 11 debtors to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account

for cash collateral; and (d) obtain checks for all debtor-in-possession accounts that bear the designation "Debtor In Possession," the bankruptcy case number and the type of account.

40. In order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible, and to aid in Dairy's efforts to reorganize, I believe that it is important that Dairy be permitted to continue to (i) maintain the Bank Accounts in the ordinary course of business, and (ii) pay any ordinary course postpetition bank fees that may be incurred in connection with the Bank Accounts.

41. In sum, subject to a prohibition against honoring prepetition checks without specific authorization from this Court, I believe it is vitally important that the Bank Accounts be deemed debtor-in-possession accounts and that the maintenance and continued use be in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period.  If the relief requested in the Cash Management Motion is granted, Dairy will not pay, and the Banks will be directed not to pay, any debts incurred before the Petition Date other than as authorized by the Court.

42. In order to minimize expenses to the estate, Dairy also is requesting authority to continue to use all correspondence, business forms, including, but not limited to, letterheads, envelopes, promotional materials, invoices, order forms and checks existing immediately prior to the Petition Date without reference to Dairy's status as debtor-in-possession. Dairy's creditors are primarily local and will be aware of Dairy's status as debtor-in-possession. Moreover, each of Dairy's vendors will receive direct notice of the commencement of the Chapter 11 Case.  Further, I believe that changing correspondence and business forms would be expensive, unnecessary and burdensome to Dairy's estate and disruptive to Dairy's business operation and would not confer any benefit upon those dealing with Dairy.  Therefore, I believe

that Dairy should be authorized to use existing checks and business forms without being required to place the label "debtor in possession" on each.

43. In sum, it is essential that Dairy be authorized to continue the maintenance of the Bank Accounts and continue the use of existing business forms. I believe that these requests are in the best interest of Dairy, its estates and all parties in interest.

F. *Motion to Extend Deadline for Filing Debtor's Statement and Schedules Pursuant to §§ 105(a), 521, and Fed. R. Bankr. P. 1007(c)*

44. I have reviewed the Motion to Extend Deadline for Filing Debtor's Statement and Schedules Pursuant to §§ 105(a), 521 and Fed. R. Bankr. R. 1007(c) ("Schedules Extension Motion"). Based upon my review of the Schedules Extension Motion, I understand that Dairy is seeking entry of an order extending the date by which Dairy must file its Statement of Financial Affairs and Schedules of Assets and Liabilities (collectively, "Statement and Schedules"). I believe that this request is in the best interests of Dairy, its estate and all parties in interest.

45. I believe that the early days of the Chapter 11 Case may consume all of my time as I am new to this process and will need time to understand the new reporting and other requirements which Dairy will be required to fulfill.

46. Running a dairy farm is a twenty-four hour a day job, and I do not believe that fourteen days is enough time to allow me to accurately and fully complete the Statement and Schedule.

Pursuant to 26 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on August 12, 2010 at Indianapolis, Indiana.

FOUR-LEAF CLOVER DAIRY, LLC

By: _____
Printed:  Leontien Martina Wilhemina van de Laar
Title:  Manager of Four-Leaf Clover Dairy, LLC

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing was served on the attached service list by expedited delivery (UPS or United States Express Mail) on the 12th day of August, 2010.

                                              /s/ Terry E. Hall

| | | |
|---|---|---|
| United States Trustee<br>One Michiana Square Building<br>100 East Wayne Street, Suite 555<br>South Bend, IN 46601-2349 | Internal Revenue Service<br>Centralized Insolvency Operations<br>PO Box 21126<br>Philadelphia, PA 19114-0326 | L&P Heifers<br>PO Box 185<br>Shipshewana, IN 46565-0185 |
| Cooper Farms, Inc.<br>2321 State Route 49<br>Fort Recovery, OH 45846 | Phenix Farms, Inc.<br>11293 S 700 E 90<br>Geneva, IN 46740 | Jim Wenger<br>2254 S State Road 301<br>Bluffton, IN 46714-9316 |
| Egbert Ok Livestock<br>12361 Lock Two Road<br>Botkins, OH 45306 | Jay Parker & Sons LLC<br>10462 S 450 W<br>Silver Lake, IN 46982-9154 | Brian Wuertemberger<br>4562 Locust Grove Rd<br>Richmond, IN 47374-9427 |
| EMJ Farms<br>5135 S 500 E<br>Bluffton, IN 46714-9639 | DeLaval Direct Distribution, LLC<br>4300 E 100 N Dustman Road<br>Bluffton, IN 46714-9347 | ADM Alliance Nutrition Inc.<br>1000 N 30th St<br>Quincy, IL 62301-3400 |
| Maria Stein Animal Clinic<br>8155 State Route 119<br>Maria Stein, OH 45860-8710 | MWI Veterinary Supply<br>14659 Collections Center Drive<br>Chicago, IL 60693-0001 | Steffen Oil Co. Inc.<br>705 W Market<br>PO Box 553<br>Bluffton, IN 46714-0553 |
| Commodity Specialists Company<br>6555 Busch Blvd<br>Columbus, OH 43229-1739 | Doug Landrum<br>2077 S 200 W<br>Huntington, IN 46750-9184 | Max Beer<br>Beer Farms, Inc.<br>1971 W 300 S<br>Berne, IN 46711-9579 |
| Cole Warren Farms<br>7147 S County Road 130 W<br>Frankfort, IN 46041-7553 | Zeeland Farms Services, Inc.<br>2525 84th Ave<br>Zeeland, MI 49464-9501 | Unlimited Electric Inc<br>6450 N Rushville Rd<br>Carthage, IN 46115-9775 |
| Veterinary & Poultry Supply, Inc.<br>2598 E Maple Dr<br>Bluffton, IN 46714-9246 | LaSalle Bank National Association<br>135 S LaSalle Street<br>Chicago, IL 60603 | Caterpillar Financial Services Corp<br>2120 West End Avenue<br>Nashville, TN 37203 |
| Deere & Company<br>6400 NW 86th Street<br>Johnston, IA 50131 | First National Bank of Syracuse<br>PO Box 928<br>Syracuse, KS 67878 | John Deere Construction & Forestry<br>6400 NW 86th Street<br>Johnston, IA 50131 |
| Alan K. Mills<br>Barnes & Thornburg LLP<br>11 South Meridian Street<br>Indianapolis, IN 46204-3535 | | |